Matthew G. Monforton
Monforton Law Offices, PLLC
32 Kelly Court
Bozeman, MT 59718
Tele.: (406) 570-2949; Fax: (406) 551-6919
Attorney for the County Central Committee Plaintiffs

James E. Brown
The James Brown Law Office, PLLC
30 S. Ewing St., Suite 100
Helena, MT 59601
Tele.: (406) 449-7444; Fax: (406) 443-2478
Attorney for Plaintiff Montana Republican Party

## UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA

| | |
|---|---|
| RAVALLI COUNTY REPUBLICAN CENTRAL COMMITTEE, GALLATIN COUNTY REPUBLICAN CENTRAL COMMITTEE, SANDERS COUNTY REPUBLICAN CENTRAL COMMITTEE, DAWSON COUNTY REPUBLICAN CENTRAL COMMITTEE, STILLWATER COUNTY REPUBLICAN CENTRAL COMMITTEE; RICHLAND COUNTY REPUBLICAN CENTRAL COMMITTEE; CARBON COUNTY REPUBLICAN CENTRAL COMMITTEE; FLATHEAD COUNTY REPUBLICAN CENTRAL COMMITTEE; MADISON COUNTY REPUBLICAN CENTRAL COMMITTEE; BIG HORN COUNTY REPUBLICAN CENTRAL COMMITTEE; MONTANA REPUBLICAN PARTY,<br><br>      Plaintiffs,<br>  v.<br><br>LINDA McCULLOCH, in her official capacity as Montana's Secretary of State, *et al.*,<br><br>      Defendants. | Case No. CV 14-0058-H-BMM<br><br>**REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION .................................................................................................1

ARGUMENT .........................................................................................................1

I    THE PARTY IS ENTITLED TO SUMMARY JUDGMENT
BECAUSE MONTANA'S OPEN PRIMARIES VIOLATE
ITS RIGHT TO IDENTIFY ITS MEMBERS ......................................................1

II    THE PARTY IS ENTITLED TO SUMMARY JUDGMENT
BECAUSE MONTANA'S OPEN PRIMARIES VIOLATE
ITS RIGHT TO EXCLUDE NONMEMBERS FROM
SELECTING ITS NOMINEES ...........................................................................6

    A.    Forcing the Party to Allow Nonmembers to Select Party
Nominees Violates Its Right of Association as a Matter
Of Law ......................................................................................................6

    B.    The "Expert" Opinion Offered by the State's Attorneys
Concerning Candidate Message Shifting Does Not
Create a Disputed Material Fact ...............................................................8

    C.    The State's Expert Offers No Basis for His Opinion
That Crossover Voting Rates in Open Primary States
Are Inapplicable to Montana ..................................................................12

    D    The Open Primary System Is Not Narrowly Tailored to
Serve Any Compelling Interest ...............................................................13

CONCLUSION ....................................................................................................14

# TABLE OF AUTHORITIES

**Cases:**

*Arizona Libertarian Party v. Bayless*,
  351 F.3d 1277 (9th Cir. 2003) ............................................................................7

*California Democratic Party v. Jones,*
  530 U.S. 567 (2000) ..............................................................................*passim*

*California Democratic Party v. Jones*,
  169 F.3d 646 (9th Cir. 1999) ..............................................................................8

*Clingman v. Beaver,*
  544 U.S. 581 (2005)................................................................................*passim*

*Democratic Party of United States v. Wisconsin ex rel. La Follette,*
  450 U.S. 107 (1981)......................................................................................1, 6

*Democratic Party of Washington State v. Reed,*
  343 F.3d 1198 (9th Cir. 2003) ............................................................................7

*Miller v. Brown*,
  462 F.3d 312 (4th Cir. 2006) ..............................................................................8

*Miller v. Brown*,
  503 F.3d 360 (4th Cir. 2007) .........................................................................4, 6

*Tashjian v. Republican Party of Connecticut,*
  479 U.S. 208 (1986)........................................................................................2, 4

# INTRODUCTION

Plaintiffs[1] submit the following reply brief in support of their motion for summary judgment.

# ARGUMENT

I   THE PARTY IS ENTITLED TO SUMMARY JUDGMENT BECAUSE MONTANA'S OPEN PRIMARIES VIOLATE ITS RIGHT TO IDENTIFY ITS MEMBERS

The State repeatedly insists that it may require the Party to select nominees in state-run primaries. The Party does not disagree.

When the State exercises this right, however, it "must act within limits imposed by the Constitution." *California Democratic Party v. Jones,* 530 U.S. 567, 572, 573 (2000). This includes upholding the Party's First Amendment right of association, a right that "necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only." *Id.* at 574, quoting *Democratic Party of United States v. Wisconsin ex rel. La Follette,* 450 U.S. 107, 122 (1981).

The State must also pay the administrative costs of a state-run primary, particularly those required to safeguard associational rights:

---

[1] Plaintiffs shall be referred to collectively as the "Montana Republican Party" or the "Party."

> While the State is of course entitled to take administrative and financial considerations into account in choosing whether or not to have a primary system at all, it can no more restrain the Republican Party's freedom of association for reasons of its own administrative convenience than it could on the same ground limit the ballot access of a new major party.

*Tashjian v. Republican Party of Connecticut,* 479 U.S. 208, 218 (1986).

The State's refusal to register party affiliation severely burdens the ability of the Montana Republican Party to reach its members during primary elections. *Clingman v. Beaver,* 544 U.S. 581, 595 (2005) ("Direct solicitation of party members…is part of any primary election campaign" and "[i]t is undisputed that the voter registration lists, with voter affiliation information, provide essential information…for other campaign and party-building activities, including canvassing and fundraising"). Thus, "without registration rolls that accurately reflect likely or potential primary voters, parties risk expending precious resources to turn out party members who may have decided to cast their votes elsewhere." *Id.* While the State attempts to distinguish *Clingman*, Doc. 101, pp. 3-5, it does not dispute the opinion's underlying premise: incomplete party registration lists burden parties' abilities to identify and turnout their members during primary elections.

Montana's open primary system, which lacks *any* party registration, imposes an even greater burden upon the Montana Republican Party than the burden described in *Clingman*:

> With the open primary system, we don't know who we are messaging to, we don't know how to communicate with our members. And that interferes with us both in a primary and a general election. For example, in a primary, while we wouldn't want to tell people who to vote for, we'd want to leave that up to our members, we would want to encourage them to get out and vote so that as many Republicans as possible in the state of Montana were participating in the process of selecting a nominee.

Doc. 93-1, p. 60. Thus, Montana Republicans "are spending a good chunk of our time and our money on constant identification instead of turning our base of voters." *Id.*

The State denies having a constitutional duty to identify Party members. Doc. 101, p. 2. It would be correct if it did not mandate the Party's participation in state-run primaries. Without primaries, the Party would rely upon state and local conventions to select nominees. Doc. 93-1, p. 130. The Party would be responsible for running these conventions, which would consist of members who would be few in number and easily identifiable.

By forcing the Party to participate in a state-run primary, however, the State removes the authority to select Party nominees from a small number of Party delegates to an electorate consisting of all of Montana's 626,000 registered voters, all of whom are eligible to vote in its primary. Doc. 103-1, p. 3. The Party cannot identify its members amongst these 626,000 voters. Because the State's mandatory open primary system severely burdens the Party's constitutional right to identify its members, the State is obligated to ameliorate this burden by registering voters'

3

party affiliation.

The State claims "no case has ever held that a state must register voters' party affiliations for the benefit of political parties." Doc. 101, p. 5. This is incorrect. See, *e.g.*, *Miller v. Brown*, 503 F.3d 360, 370 (4th Cir. 2007) (rejecting Virginia's argument that state sovereignty allowed it conduct primary elections without party registration).

The State also claims that it may "prioritize the right of the voter to choose what party they associate with, *in private*, over the Party's right to publicly identify 'Republican' voters." Doc. 101, p. 9 (emphasis added). The Supreme Court disagrees. *Jones*, 530 U.S. at 573, n.5 ("As for the associational "interest" in selecting the candidate of a group to which one does not belong, that falls far short of a constitutional right, if indeed it can even fairly be characterized as an interest"); *id.* at 583 ("the nonmember's desire to participate in the party's affairs is overborne by the countervailing and legitimate right of the party to determine its own membership qualifications"), quoting *Tashjian,* 479 U.S. at 215 n.6. The Party's sole membership qualification is registration as a Republican. Doc. 93-1, p. 130. Its right to enforce this requirement trumps the right of voters to privately and anonymously select Party nominees, assuming that the latter "right" even exists.

Besides relying upon faulty legal arguments, the State repeatedly misrepresents the record. For example, it claims the Party is challenging Montana's open primary system on its face. Doc. 101, p. 5 ("Plaintiffs in effect present a facial challenge to Montana's open primary system"); *id.* ("this Court should deny Plaintiffs' facial challenge,"); *id.* p. 14 ("Plaintiffs thereby claim that all open primary systems are *per se* unconstitutional, thus presenting a facial challenge to Montana's open primary"); *id.* p. 14 ("Plaintiffs fail to show that in all factual circumstances their associational rights are 'severely burdened' by Montana's open primary, and their facial challenge consequently fails"). The Party, however, is challenging Montana's open primary system "*as applied* to the Montana Republican Party." Doc. 93, p. 1 (emphasis added); Doc. 71, p. 1. The Party's Complaint is clear on this issue, too. Doc. 43, p. 2, ¶1; *id.*, p. 14, ¶ 70; *id.*, p. 15.

The State claims the Party "has apparently chosen not to create or maintain an official membership roll." Doc. 101, p.10. This is false. The Party has attempted for decades to generate a list of its voters, but cannot create an accurate one. Doc. 93-1, p. 64. As a result, Montana Republicans "spend much more of our time trying to improve and update that list that we have rather than trying to turn out our voters and with our voters." *Id.,* p. 27.

The State does not dispute the evidence showing the Party's inability under

5

Montana's open primary system to exercise its constitutional right to identify its members among 626,000 registered Montana voters. The Party is therefore entitled to summary judgment.

II THE PARTY IS ENTITLED TO SUMMARY JUDGMENT BECAUSE MONTANA'S OPEN PRIMARIES VIOLATE ITS RIGHT TO EXCLUDE NONMEMBERS FROM SELECTING ITS NOMINEES

    A. <u>Forcing the Party to Allow Nonmembers to Select Party Nominees Violates Its Right to Association as a Matter of Law</u>

Besides depriving the Montana Republican Party of its right to identify its members, Montana's open primary system violates the Party's right to exclude nonmembers. Indeed, forced association in a primary election between an unwilling political party and nonmembers violates the First Amendment as a matter of law. Doc. 93, p. 15.

The State contends otherwise and accuses the Party of "acting willfully ignorant of the differences between *Jones* and their case." Doc. 101, p. 5. This remark is both inappropriate and unsupported by a review of pertinent caselaw. The Supreme Court described Wisconsin's open primary system as constituting a "*substantial intrusion* into the associational freedom of members of the National [Democratic] Party." *Jones,* 530 U.S. at 576, quoting *La Follette*, 450 U.S. at 126 (emphasis added). The Court reached this holding despite the absence of any evidence presented by the National Democratic Party showing that Wisconsin's

6

open primary system changed candidate messaging or election outcomes. And, while the Court analyzed survey evidence presented by the plaintiffs in *Jones*, the Court did not hold that such evidence was necessary for the plaintiffs to prevail.

Additionally, the Fourth and Ninth Circuits interpret *Jones* as holding that forced association between political parties and nonmembers violates the First Amendment as a matter of law. *Miller,* 503 F.3d at 368 ("the type of forced association caused by a mandatory open primary causes significant injury to the First Amendment rights of a political party"); *Democratic Party of Washington State v. Reed*, 343 F.3d 1198, 1203 (9th Cir. 2003) (*Jones* "does not set out an analytic scheme whereby the political parties submitted evidence establishing that they were burdened. Instead, *Jones* infers the burden from the face of the blanket primary statutes"); see also *Clingman*, 544 U.S. at 595 ("opening the [Libertarian Party's] primary to all voters" would "render [its] *imprimatur* an unreliable index of its candidate's actual political philosophy").

The Party acknowledges contrary Ninth Circuit authority. *Arizona Libertarian Party v. Bayless*, 351 F.3d 1277, 1282 (9th Cir. 2003). Nevertheless, the substantial weight of authority holds that a political party's involuntary association with nonmembers violates its right of association as a matter of law.

B The "Expert" Opinion Offered by the State's *Attorneys* Concerning Candidate Message Shifting Does Not Create a Disputed Material Fact

Summary judgment for the Party is also warranted because candidate message shifting is occurring in Montana as a result of its open primary system. The courts have made clear that opening a party's primary to all voters results in distorted candidate messaging. *Jones,* 530 U.S. at 580 (a "deleterious effect" of California's blanket primary was to "favor nominees with moderate positions" by rewarding candidates who "curry favor with persons whose views are more 'centrist' than those of the party base"); *Clingman*, 544 U.S. at 595 ("opening the [Libertarian Party's] primary to all voters" would "render [its] *imprimatur* an unreliable index of its candidate's actual political philosophy"); *Miller v. Brown*, 462 F.3d 312, 317-18 (4th Cir. 2006) ("the mere existence of the open primary law causes [campaign] decisions to be made differently than they would absent the law"); *California Democratic Party v. Jones*, 169 F.3d 646, 658 (9th Cir. 1999), *rev'd on other grounds*, 530 U.S. 567 (2000) ("the possibility of a decisive cross-over vote - whether or not that vote materializes - could well affect the conduct of elections and elected officials. Under a blanket primary or open primary, the primary election becomes similar to the general election.")

The Party's experts have opined that candidate message shifting is occurring as a result of Montana's open primary system. See, *e.g.*, Doc. 55-1, p. 13. The Party's experts rely upon several published studies, including one showing that

8

members of Congress from states with closed primaries take more extreme policy positions than members from states with open primaries. Doc. 71-10, pp. 29, 54, 102-103, citing Gerber and Morton (1998) "Primary Election Systems and Representation," *Journal of Law Economics & Organization* 14(2): 304–324. They also rely on several studies showing moderation of messaging by presidential and congressional candidates. Doc. 55-1, p. 13.

They also reviewed a sworn statement from Brad Molnar, a long-time Party campaign consultant. *Id.*, p. 13. Molnar advises candidates to avoid issues that encourage union members to crossover into Republican primaries, such as right-to-work and school choice. Doc. 55-6, pp. 6-7, ¶¶ 8-9, 15. Many Republican primary candidates avoid these issues. *Id.*, ¶ 14. Molnar also testified that he will continue advising candidates to avoid such issues because of the MEA-MFT's efforts to encourage members to crossover into Republican primaries. *Id.*, ¶ 13-15.

The State cites an opinion from its expert that there is no compelling evidence the MEA-MFT's efforts likely resulted in crossover voting. Doc. 101, p. 10, quoting Doc. 71-3, p. 19. His opinion, however, concerns the MEA-MFT's influence upon *voters*. Doc. 71-3, p. 19. The State's expert offers no opinion on the MEA-MFT's influence upon *candidates*.

Indeed, the State's expert offers no opinion regarding the effect of open primaries upon campaign messaging. He instead claims that none of the Party's

9

studies compare candidate messaging between open and closed primaries. Doc. 93-3, p.11. This is incorrect. The Gerber and Morton study expressly compared issue-positioning by members of Congress in states with open primaries versus those with closed primaries. Doc. 71-10, pp. 29, 54, 102-103. Tellingly, the State's expert reviewed this study but chose not to comment on it. Doc. 93-3, p. 31.

Bereft of any opinion from its own expert concerning candidate message shifting, the State's *attorneys* offer their opinion that the Gerber and Morton study falls short because candidate message shifting "could be due to factors other than the primary elections." Doc. 101, p. 12. The State's attorneys further opine that the study's conclusions should apply only to Democratic primaries. *Id.*

The State's attorneys, however, are not experts and thus their opinions of the Gerber and Morton study cannot cure the omissions in their expert's report. Moreover, the State misrepresents the conclusion of the study: "Gerber and Morton, while discussing how congressional representatives from states with open, blanket and semi-closed primaries tend to be more moderate do not, however, hypothesize or conclude that the type of primary *causes* the alteration of the party or candidate's message." Doc. 105, p. 3, n. 1 (emphasis in original). The State is wrong. Doc. 93-10, p. 103, quoting Gerber and Morton (1998), p. 321 (concluding that "primary election laws systematically affect the types of candidates elected and the choices they make once in office"); *id.,* p. 322 ("if closeness to the median

10

voter is viewed as desirable, then open primaries are preferable to closed primaries"). And, contrary to the opinion of the State's attorneys, the Gerber and Morton study does not limit its conclusions to Democratic primaries.

The State also mischaracterizes Molnar's advice to Republican primary candidates to avoid union-related issues. It claims his advice "may well be the result of the independent nature of Montana voters." Doc. 101, p. 10. Molnar expressly testified, however, that he advises Republican candidates to avoid union-related issues such as right-to-work in order to decrease the risk of union members crossing over into Republican primaries. Doc. 93-7, p. 2, ¶¶ 8-9.

The State also tries to discount the relevance of Molnar's testimony by claiming his advice "falls short of empirical evidence," Doc. 101, p. 10, and "Plaintiffs have failed to provide any foundation to support Mr. Molnar's perspective, such as evidence of previous failed strategies, election data or even anecdotal evidence from past legislative races." Doc. 105, p. 3.

This argument misses the point. The Party's experts relied upon evidence that Republican candidates follow Molnar's advice and avoid the Party platform regarding union issues. This evidence provides additional support for the experts' opinion that, because of open primaries, candidates have altered their messaging in the past and will do so in the future.

11

### C  The State's Expert Offers No Basis for His Opinion That Crossover Voting Rates in Open Primary States Are Inapplicable to Montana

The Party's experts conclude that the average crossover rate for Montana's open primaries, as with the rate in other open primary states, is approximately 10% for partisan voters. Doc. 55-1, p. 10. When independent voters are included, this rate rises to 20-30%. *Id.* Even with a 10% crossover rate, "the results of the primaries are more likely than not affected by crossover voting." *Id.*, p. 17. When independent voters are factored in, the effects are even more disruptive and result "in more moderate legislators being elected, thus distorting the consistency and broadening the ideological diversity among the Republican Party's officeholders in the Montana Legislature." *Id.*

The State insists that only Montana-specific evidence may be used to determine crossover voting rates in Montana. Dr. Saunders acknowledges that a valid Montana survey would provide the best evidence of crossover rates in Montana. Doc. 93-10, p. 13. He does not claim, however, that such a survey is the *only* means by which valid estimates of crossover voting can be made. In fact, he said exactly the opposite. *Id.* The Party's experts explained that crossover voting rates in Montana could be inferred from average crossover voting rates in open primaries throughout the nation because Montana is a typical, ideologically balanced, two-party state with single-member districts. Doc. 93-10, pp. 13, 27-28. The State's expert offers only bare assertions that such inferences cannot be made.

This is not sufficient to exclude the Party's opinion evidence concerning crossover voting rates in Montana.

    D  <u>The Open Primary System is not Narrowly Tailored to Serve Any Compelling Interest</u>

Because Montana's open primary system severely burdens the Party's First Amendment right of association, it can survive strict scrutiny only if it is narrowly tailored to achieve a compelling interest. *Jones*, 530 U.S. at 582. The State argues that the Montana Constitution provides a compelling interest in preserving the privacy of voters' party affiliation. Doc. 101, p. 19. One problem with this argument is that the Montana Supreme Court has never considered whether party affiliation is the kind of information protected by the Montana Constitution. A bigger problem is that an infringement of the Party's First Amendment rights must be justified by a compelling interest recognized under *federal law*. The Supreme Court has already ruled on this issue regarding privacy:

> The specific privacy interest at issue is not the confidentiality of medical records or personal finances, but confidentiality of one's party affiliation. Even if (as seems unlikely) a scheme for administering a closed primary could not be devised in which the voter's declaration of party affiliation would not be public information, we do not think that the State's interest in assuring the privacy of this piece of information in all cases can conceivably be considered a "compelling" one.

*Jones*, 530 U.S. at 585. The State does not attempt to refute the Court's holding in *Jones* or even mention it.

13

In addition to the State's interests not being compelling, Montana's open primary system is not narrowly tailored to serve them. This is because the State could protect them all by resorting to a *nonpartisan* primary. *Jones*, 530 U.S. at 585.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion for summary judgment.

DATED: October 23, 2015

Respectfully submitted,
Monforton Law Offices, PLLC

/s/ Matthew G. Monforton
Matthew G. Monforton

Attorney for the County Central Committee Plaintiffs


The James Brown Law Office, PLLC

/s/ James E. Brown
James E. Brown

Attorney for Plaintiff Montana Republican Party

## **CERTIFICATE OF COMPLIANCE WITH L. R. 7.1(d)(2)(E)**

I hereby certify that this document, excluding caption, tables and certificate of compliance, contains 3,134 words, as determined by the word processing software used to prepare this document, specifically Microsoft Word 2007.


DATED: October 23, 2015         Respectfully submitted,
                                Monforton Law Offices, PLLC

                                /s/ Matthew G. Monforton
                                Matthew G. Monforton

                                Attorney for the County Central
                                Committee Plaintiffs


                                The James Brown Law Office, PLLC

                                /s/ James E. Brown
                                James E. Brown

                                Attorney for Plaintiff Montana Republican Party

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY this 23rd day of October, 2015, that a copy of the foregoing will be delivered this day via the Court's ECF system to the following:

TIMOTHY C. FOX Montana Attorney General
J. STUART SEGREST
PATRICK M. RISKEN
Assistant Attorneys General
 215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
ssegrest@mt.gov
prisken@mt.gov


DATED: October 23, 2015    Respectfully submitted,
                           Monforton Law Offices, PLLC

                           /s/ Matthew G. Monforton
                           Matthew G. Monforton

                           Attorney for the County Central
                           Committee Plaintiffs


                           The James Brown Law Office, PLLC

                           /s/ James E. Brown
                           James E. Brown

                           Attorney for Plaintiff Montana Republican Party

16